~~EXHIBIT 1~~

**STIPULATED E-DISCOVERY AGREEMENT**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BIO-RAD LABORATORIES, INC., THE UNIVERSITY OF CHICAGO, LAWRENCE LIVERMORE NATIONAL SECURITY, LLC, and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Plaintiffs,<br><br>v.<br><br>STILLA TECHNOLOGIES, INC., and STILLA TECHNOLOGIES,<br><br>Defendants. | Civil Action No. 1:19-cv-11587<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Bio-Rad Laboratories, Inc. ("Bio-Rad"), The University of Chicago ("University of Chicago"), Lawrence Livermore National Security, LLC ("Lawrence Livermore"), and President and Fellows of Harvard College ("Harvard University") (collectively "Plaintiffs"), and Defendants Stilla Technologies, Inc. ("Stilla (US)") and Stilla Technologies ("Stilla (FR)") (collectively, "Stilla" or "Defendants") agree that this proposed Document Production Order ("Production Order") shall govern the Parties in the above-captioned case (the "Litigation").

**I. GENERAL PROVISIONS**

**A.** This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

**B.** The Parties will make reasonable efforts to prepare responsive and non-privileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to hard copy documents or ESI which are to be produced in this Litigation.

C. **SECURITY.** The Parties will make reasonable efforts to ensure that any productions made are free from viruses and may be provided on encrypted media.

D. **CONFIDENTIALITY DESIGNATION.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

E. **PRODUCTION MEDIA.** Documents shall be produced on secure file transfer programs, such as ShareFile and SFTP, that are mutually agreeable to the Parties. As an alternative to producing documents on secure file transfer programs, the production may be produced on readily accessible external hard drives, DVD, or CD disks ("Production Media"). When reasonably feasible, each piece of Production Media shall be labeled with (1) the producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

F. **PRIVILEGE.** Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Other communications may be identified on a privilege log by category, rather than individually, if appropriate; however, a party may request and/or move for a document-by-document log upon a showing of good cause.

G. **NON-WAIVER.** Any document, native file, email, or custodial ESI that contains privileged matter or attorney work product shall be handled in accordance with the provisions set forth in Section 12 of the Stipulated Protective Order.

## II. DATA PROCESSING

A. **DEDUPLICATION.** To the extent feasible, the Parties will de-duplicate responsive ESI across Custodians. For each de-duplicated document, to the extent feasible, the names of all custodians that possessed the document shall be produced. De-duplication may be done automatically via standard techniques such as those based on MD5 or SHA-1 hash values.

## III. GENERAL PRODUCTION SPECIFICATIONS

**A. FORMAT.** To the extent feasible, documents (whether originating in electronic or hard copy format) shall be produced as single page, Group IV TIFF files in black and white format. To the extent feasible, documents originating in hard copy format shall be converted to TIFF images by scanning with at least 300 dots per inch (dpi). Each image shall be named according to the corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and given a confidentiality designation, if applicable. Each image shall show all text and images that would be visible to a user of the hard copy documents, including any tracked changes, comment fields in the document, or presenter notes. Finally, each document that is produced in native form shall also be accompanied with a Bates-stamped slipsheet image, including any confidentiality designations.

For any black and white document that a Party has received from the other Party and believes it necessary to have that document in color, that Party shall notify the other Party of the identity of such documents by Bates number and the other Party shall produce such document as JPEG files in color within a reasonable period of time after receipt of the Party's request (to the extent that the document is available in color). Each Party shall keep such requests for color documents to a reasonable number it believes necessary to advance its case.

**B. TEXT TO BE PROVIDED WITH IMAGE FILES.** For each document, extracted or optical character recognition ("OCR") text in UTF-8 format shall be provided. To the extent possible, the text of native files should be extracted directly from the native file. If a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text. Extracted or OCR text shall be included as one separate file per document, so long as it is provided in such a manner that it can be loaded into commercially acceptable production software (*e.g.*, Relativity, Concordance, Summation, Ipro).

**C. DATABASE LOAD FILES/CROSS-REFERENCE FILES.** Production shall include a DAT data load file and an OPT (Opticon) image load file in a reasonable format specified

by the requesting party, or, if no request is made in a format that can be loaded into commercially acceptable production software (*e.g.*, Relativity, Concordance, Summation, Ipro).

**D. BATES NUMBERING.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

**E. REDACTION OF INFORMATION.** If documents are produced containing redacted information, the producing Party shall supply a list of the documents for any such claim(s) of redaction, indicating the grounds for the redaction and the nature of the redacted material. During the course of the Litigation, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration, or addition the content of such data including any metadata therewith. This Production Order, the Stipulated Protective Order, and the rules of the Court in this case set forth the basis for the redaction of information.

**F. UNITIZING OF DOCUMENTS.** Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, documents should be unitized as kept in the ordinary course of business). The Parties will use reasonable efforts to unitize documents correctly. To the extent a Party believes that it is necessary to split a single document into multiple records due to the size of such document, such multiple records shall be identified as being related through the use of the BEGATTACH and ENDATTACH metadata fields.

## IV. PRODUCTION OF ELECTRONICALLY STORED INFORMATION

**A. METADATA FIELDS AND PROCESSING.** E-discovery production requests under Federal Rules of Civil Procedure 34 and 45 shall not require metadata, other than as specified on Exhibit A attached. However, if a Party believes in good faith that additional metadata are necessary for providing substantive context to a specific produced document or native file, then the producing party and the receiving party shall meet and confer in good faith to determine the extent to which additional metadata should be produced. Any Metadata that is produced shall be formatted into a .dat file with delimiters appropriate for use with commercially acceptable review

software (*i.e.*, a load file). Parties may request other native files be produced as described in Section IV.D. below.

**B. NATIVE FILES.** Spreadsheets, audio files, and videos must be produced in native format.

**C. PROPRIETARY FILES.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the Parties should continue to preserve each version of such information. The Parties shall meet and confer to finalize the appropriate production format.

**D. REQUEST(S) FOR ADDITIONAL NATIVE FILES.** If good cause exists to request production of specified files, other than those specifically set forth above, in native format, the Party shall request such production and provide an explanation of the need for native file review. The Parties shall work together to provide documents in reasonable useful format.

## V. PROCESSING OF THIRD-PARTY DOCUMENTS

**A.** A Party that issues a subpoena requesting the production of documents ("Issuing Party") shall include a copy of this Production Order with the subpoena and state that the Parties to the Litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

**B.** The Issuing Party shall ensure that any documents it obtains pursuant to a subpoena are produced to all Parties as soon as reasonably possible.

**C.** If the third-party production is not Bates-stamped, the Issuing Party will endorse the third-party production with unique prefixes and Bates numbers prior to producing them to other Parties.

**D.** Nothing in this stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

## VI. SEARCHING AND SCOPE OF PRODUCTION

**A. SOURCES.** In responding to general requests under Federal Rules of Civil Procedure 34 and 45 that may implicate the production of ESI, the Parties will search central

repositories, such as shared network drives, document databases, and if necessary other locations where shared documents and files may be held by individuals who are designated as being responsible for the maintenance and safekeeping of such documents on behalf of the Party (or Parties). In general, the Parties shall not be required to search email, other forms of electronic correspondence, or custodial ESI in responding to such requests.[1]

  **B. SOURCES THAT NEED NOT BE SEARCHED.** The following locations will not be searched under any circumstances, and as such need not be preserved, absent a Court order upon showing of good cause: deleted or fragmented data accessible only by forensics; Web browser data such as temporary Internet files, history, cache, and cookies; server, system, or network logs; personal digital assistants; mobile phones and tablets; voicemail systems; instant messaging applications, and similar communications that are not printed and/or maintained by a Party; company employee internal social media profiles; data remaining from systems no longer in use that are not readily accessible on systems currently in use; and automated disaster recovery backup systems and/or disaster recovery backup tapes. In addition, the Parties agree that with respect to documents that automatically "autosave," only the most recent version of such documents need be searched.

  **C. EMAIL AND CUSTODIAL ESI REQUESTS.** To obtain email or custodial ESI beyond that stated in section VI(A) above, a Party must propound specific requests for the production of email or custodial ESI. Such requests shall be propounded for specific issues (rather than general discovery of a product or business) and shall identify the requested custodian, search terms/phrases, and time frame. The Parties shall cooperate to identify the proper custodians subject to these requests and proper search terms/phrases.

---

[1] As used herein, "custodial ESI" refers to ESI that is in the possession of an individual custodian, rather than in central repositories, and for which such individual custodian is not designated as being responsible for the maintenance and safekeeping of such documents on behalf of the Party (or Parties).

Email and custodial ESI production shall be limited to a total of no more than eight custodians for the Defendants collectively and Plaintiff Bio-Rad. Email and custodial production for Plaintiffs University of Chicago, Lawrence Livermore, and Harvard University shall be limited as is reasonable according to the needs of the parties, but shall not exceed two custodians per party for each of said Plaintiffs. These limitations may be modified upon a showing of good cause. The email and custodial ESI production from such custodians shall be limited to a total of no more than five ESI search terms/phrases per custodian. The Parties may jointly agree to modify the limits on search terms/phrases without the Court's leave. The Court shall consider contested requests for up to five additional search terms/phrases per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request. Search terms/phrases shall be narrowly tailored to the particular issues addressed by the specific requests for production of email or custodial ESI. Indiscriminate terms/phrases, such as the producing Party's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. Search terms/phrases unrelated to a specific request for production of email or custodial ESI are prohibited. A conjunctive combination of multiple words or phrases narrows the search and shall count as a single search term/phrase. A disjunctive combination of multiple words or phrases broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

Email and custodial ESI production requests shall be phased to occur after the Parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.

**D.     COLLECTION METHODS.** The producing party need not employ forensic data collection or tracking methods and technologies, but instead may make electronic copies for collection and processing purposes using widely-accepted methods or methods described in

manufacturers' and/or programmers' instructions, help menus, websites, and the like that preserve the metadata of the native files contained therein (*e.g.*, .pst, .zip, etc.), except when and to the extent there is good cause to believe specific, material concerns about authenticity exist with respect to specific documents and materials. If the receiving party believes that there is such good cause, then the producing party and the receiving party shall meet and confer in good faith to determine the extent to which forensic and other data associated with the specific documents and materials should be produced.

**VII. MISCELLANEOUS PROVISIONS**

**A. OBJECTIONS PRESERVED.** Nothing in this Production Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**B.** Except as expressly stated, nothing in this Production Order affects the Parties' discovery obligations under the Federal Rules, Civil Local Rules, or Patent Local Rules.

**C.** This Production Order may be modified in the Court's discretion or by stipulation.

**D.** As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

**E.** A party's meaningful compliance with this Production Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

**F.** Nothing in this Production Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: 12/5/2019

WEIL GOTSHAL & MANGES LLP

By: */s/ Derek C. Walter*
Derek C. Walter
Attorney for Plaintiff Bio-Rad Laboratories, Inc.

Dated: 12/5/2019

FISH AND RICHARDSON PC

By: */s/ Whitney A. Reichel*
Whitney A. Reichel
Attorney for Defendants Stilla Technologies, Inc. and Stilla Technologies.

**IT IS SO ORDERED.**

Dated: December 10, 2019

William G. Young
United States District Judge
William G. Young