IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

BIO-RAD LABORATORIES, INC., AND THE
UNIVERSITY OF CHICAGO,

Plaintiffs,

v.

STILLA TECHNOLOGIES INC., AND
STILLA TECHNOLOGIES,

Defendants.

Civil Action No. 1:19-cv-11587-WGY

---

## JOINT MOTION REGARDING UNRESOLVED DOCKETED MATTERS

Plaintiffs Bio-Rad Laboratories, Inc. ("Bio-Rad"), The University of Chicago ("University of Chicago"), Lawrence Livermore National Security, LLC ("Lawrence Livermore"), and President and Fellows of Harvard College ("Harvard University") (collectively "Bio-Rad" or "Plaintiffs"), and Defendants Stilla Technologies, Inc. ("Stilla (US)") and Stilla Technologies ("Stilla (FR)") (collectively, "Stilla" or "Defendants"), jointly ask the Court to i) enter the parties' Second Amended Proposed Pretrial Schedule (Dkt. 59); and ii) rule on the parties' competing prosecution bar language identified in the parties' Protective Order (Dkt. 43).

The Court has consolidated *Bio-Rad Laboratories and the University of Chicago v. Stilla*, Case No. 1:19-cv-11587-WGY ("Stilla Massachusetts Action") with *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, Case No. 1:19-cv-12533-WGY ("10X Massachusetts Action") for the purposes of discovery, so defendant 10X Genomics from the 10X Massachusetts Action also hereby submits its proposal for the prosecution bar language, attached as Exhibit B, that should apply in its case, especially in light of the long litigation history between 10X and Bio-Rad. 10X and Bio-Rad continue to negotiate the other aspects of the Protective Order for 10X

Massachusetts Action, but submit this dispute to the Court's resolution at the same time the Court is considering it for the Stilla case.

## I.  SECOND AMENDED PROPOSED PRETRIAL SCHEDULE

The parties' first amended schedule was entered by the Court, as modified, on December 12 (Dkt. 53, § C).  During the initial scheduling hearing on December 12, 2019, the Court stated that the parties could have two weeks to submit a modified pretrial schedule, as long as it complied with the dates set at the scheduling hearing (pretrial conference date and running trial date) and the dates prescribed by the Court in Order 53 (discovery deadline and dispositive motion deadline).  The parties submitted a Second Amended Proposed Pretrial Schedule on December 24.  (Dkt. 59.)  The parties respectfully request the Court enter this schedule.

## II.  PROSECUTION BAR IN PROTECTIVE ORDER

On December 10, the Court modified and entered the parties' Protective Order.  (Dkt. 43.)  As noted in the parties' Amended Joint Statement (Dkt. 48, § A, p. 3), the Protective Order (which was inadvertently submitted with a "stipulated" label) in fact included competing proposals from both sides regarding the proper scope of the prosecution bar within the Protective Order.  (*See* Dkt. 43, § 7.2, p. 12.)  The scope of the prosecution bar was not resolved in the entered Protective Order.  (Dkt. 43.)  The parties respectfully request the Court rule on the dispute regarding the proper scope of the prosecution bar, and re-enter the Protective Order in this case.  Each party's proposal regarding the proper scope of the prosecution bar are briefly outlined below.

**Plaintiffs' Position Regarding the Scope of the Prosecution Bar in the Protective Order with Respect to Defendants**

Defendant Stilla states below that "Plaintiffs have agreed to the inclusion of a prosecution bar…." To the extent Defendants suggest that Plaintiffs believe a prosecution bar is appropriate, this is incorrect. Plaintiffs do not believe that a prosecution bar is warranted or necessary in this case. Nevertheless, in the spirit of compromise and to narrow disputes, Plaintiffs have assented to a balanced prosecution bar precluding those who have received highly confidential information from engaging in patent prosecution of the patents-in-suit or related patents. This should be more than enough to address Defendants' concerns.

Defendants, however, insist upon an onerous prosecution bar that broadly precludes counsel from participating in any patent prosecution activities in a broad technical field without regard to whether the prosecution activities involve patents or parties at issue in this case. This prosecution bar would place severe restrictions on Plaintiffs' counsel for years to come (*i.e.*, through completion of litigation in this court, through completion of all appeals, and for an additional year thereafter) in connection with matters totally unrelated to this case. This is contrary to law, and Defendants have not justified such a broad prosecution bar.

A party seeking to impose a prosecution bar "carries the burden of showing good cause for its issuance." *In re Deutsche Bank Trust Co. v. Americas*, 605 F.3d 1373, 1378, 95 USPQ 2d (Fed. Cir. 2010). The party seeking to impose the bar bears the "threshold burden to persuade the court that they require the ***special protections*** afforded by a [patent prosecution] bar." *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS, 2019 WL 343242, at *4 (D. Mass. Jan. 25, 2019) (emphasis added).

When deciding whether an attorney should be subject to a patent prosecution bar, the key inquiry is whether the attorney has sufficient control over the content of the patent prosecution,

such that he may properly be deemed a "competitive decisionmaker." *In re Deutsche Bank*, at 1371, 1380-81 (Fed. Cir. 2010). Competitive decisionmaking is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's *advice and participation* in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *In re Sibia Neurosciences, Inc.*, 132 F.3d 50 (Fed. Cir. 1997) (citing *United States Steel Corp. v. United* States, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).[1]

 Here, there is no reason to believe Plaintiffs' counsel is involved in competitive decisionmaking, and Defendants do not even address the issue below.

### A.      Stilla's Assertions About Counsel's Involvement In Patent Prosecution Do Not Justify A Patent Prosecution Bar

Defendant Stilla requests a broad patent prosecution bar merely because Plaintiffs' counsel is involved in patent prosecution. The Federal Circuit, however, has rejected the notion that such *per se* rules—based on counsel's role as patent prosecution counsel—apply to patent prosecution bars:

> It is shortsighted to conclude that every patent prosecution attorney is necessarily involved in competitive decisionmaking. Indeed, "denying access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel.*"

*In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1379 (Fed. Cir. 2010).

Following the Federal Circuit's mandate, district courts have overwhelmingly refused to enter a patent prosecution bar where, as here, the attorney in question was involved in patent prosecution but was not otherwise involved with competitive decisionmaking. *See MedImmune,*

---

[1]*United States Steel Corp. v. United States* is the seminal Federal Circuit case stating that in determining whether in-house counsel should have access to highly confidential information, the key consideration is whether he or she is involved in competitive decisionmaking. 730 F.2d 1465, 1468 (Fed. Cir. 1984).

*Inc. v. Centocor, Inc.*, 271 F. Supp.2d 762, 774-75 (D. Md. 2003) (denying motion for protective order seeking to exclude prosecuting patent attorney from seeing confidential materials since it would amount to a *per se* prohibition on using prosecuting patent counsel as litigation counsel and party seeking exclusion did not show counsel was involved in the competitive decision making); *Adelos, Inc. v. Halliburton Company and Halliburton Energy Services, Inc.*, 2017 WL 3836131, *5-*6 (D. Mont. 2017) ("However, the mere fact that two of Adelos's attorneys practice in patent prosecution does not, by itself, warrant the inclusion of a patent prosecution bar in the protective order. . . ."); *J&M Industries, Inc. v. Raven Industries Inc.*, 2017 WL 3048919, *5 (D. Kan. 2017) ("Lawyers should not be precluded from litigating patent cases 'on the basis of a vague and generalized threat of future inadvertent misuse of discovered materials and in the absence of specific evidence that Plaintiff's counsel engages in competitive decisionmaking.'"); *Fontem Ventures B.V., a Netherlands Company*, 2017 WL 2266868, *3 (M.D.N.C. 2017) ("It is undisputed that each party possesses confidential business information relevant to the issues in dispute and that the public disclosure of this information could cause competitive harm.  It is further clear that Perkins Coie attorneys are currently and significantly involved in Fontem's efforts to expand its patent portfolio.  However, that is not enough to establish that protective order prohibiting use of such confidential information outside the litigation is insufficient to protect Reynolds' rights and that a prosecution bar is appropriate."); *Tech Pharmacy Services, LLC v. Alixa RX LLC*, 2016 WL 6071601, *2 (E.D. Tex. 2016) ("Defendants have not set forth sufficient evidence to establish that Whittle is involved in Tech Pharmacy's competitive decisionmaking as to create an unacceptable risk of inadvertent disclosure.") (citation omitted); *SmartSignal Corp. v. Expert Microsystems, Inc.*, 2006 WL 1343647 (N.D. Ill. 2006) (denying motion to preclude the counsel from prosecuting

patent  applications relating to similar technology at issue in the lawsuit during the course of the suit and for two years thereafter because motion did not establish good cause).

Below, Defendants attempt to distinguish these cases as merely addressing **whether** a patent prosecution bar should be in place, not the scope of the bar.  This distinction is without substance.   The authority above establishing that there should not be **any** prosecution bar whatsoever absent special circumstances plainly counsels in favor of restraint when it comes to the **scope** of a prosecution bar, in the event a Court decides such a bar is necessary.

**B.      10X's Assertion That A Prosecution Bar Is Justified Because It Will Produce "Highly Sensitive" Information Is Without Merit**

Defendant 10X, like Stilla, also fails to address the key issue of competitive decisionmaking.  Rather, 10x relies on generalized assertions that because Plaintiffs' outside counsel prosecutes patents, there is a possibility of inadvertent disclosure because it "expects to produce highly sensitive technical information."   Such allegations, without any discussion of competitive decisionmaking, however, do not justify a patent prosecution bar.   *See, e.g.*, *Regal Beloit America, Inc. v. Broad Ocean Motor* LLC, 2017 WL 35702, *3 (E.D. Mo. 2017) (rejecting patent prosecution bar provision where the proponent only provided "generalized assertions that the Parties are competitors, and that, absent a patent prosecution bar, Plaintiffs' patent prosecution counsel will inadvertently use the information they learn in this litigation as they continue to work on Plaintiffs' patent application, strategy, and counseling."); *Kraft Foods Global, Inc. v. Dairilean Inc.*, 2011 WL 1557881, *4 (N.D. Ill. 2011) (striking prosecution bar provision where Kraft had "not cited any evidence to demonstrate that Dairilean's outside counsel is involved in competitive decisionmaking with respect to Dairilean or any of its other clients who might compete with Kraft. Essentially Kraft requests a prosecution bar because Dairilean's litigation counsel also prosecutes patents.  This type of prosecution bar was squarely rejected by the Federal Circuit in *Deutsche*

*Bank.*"); *AFP Advanced Food Products LLC v. Snyder's of Hanover Mfg., Inc.*, 2006 WL 47374,

*2 (E.D. Pa. 2006) (the possibility of inadvertent disclosure "is not enough to justify a protective

order barring AFP's attorneys from prosecuting similar patents for two years" under Federal

Circuit and Third Circuit law).

None of the cases 10x cites justify a patent prosecution bar, and all present facts

inapplicable here. *See Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS,

2019 WL 343242, at *3 (D. Mass. Jan. 25, 2019) (adopting a prosecution bar in a case where

plaintiffs  "were in the business of acquiring patents and patent applications in order to monetize

them" on a large scale); *Cherdak v. Koko Fitclub, LLC*, No. 14-10371-IT, 2015 U.S. Dist. LEXIS

54621, at *10 (D. Mass. Apr. 27, 2019) ("A complicating factor in determining the appropriate

levels of protection in the instant case is the fact that the plaintiff, himself, is a competitor of the

defendants, and the fact that the plaintiff has elected to proceed pro se, even though he is not

presently a member in good standing of any bar, and is not admitted to practice before any court.

Therefore, as the defendants have noted, he is not subject to the same ethical rules and obligations

as practicing attorneys.").

10x also relies on *Voice Domain Techs., LLC v. Apple, Inc.*, No. 13-40138-TSH, 2014 U.S.

Dist. LEXIS 143903, at *18-19 (D. Mass. Oct. 8, 2014).  In that case, however, the proposed

prosecution bar was limited to prosecution on behalf of the client represented in the case.  Here,

however, Defendants' prosecution bar would limit outside counsel from prosecuting patents in a

broad technical field on behalf of ***any*** client in any matter, not just on behalf of Bio-Rad.  *Voice

Domain* does not remotely support 10x's proposal.

10x's remaining argument is that because Bio-Rad previously agreed to a prosecution bar

in different cases, it must do so now, and cannot ever again credibly oppose an overbroad patent

prosecution bar that is poorly suited to the facts of the case at hand.  The fact that Bio-Rad assented to a patent prosecution bar in different cases before different Courts that presented unique circumstances, however, is irrelevant.

Notably, the 1679 and 1068 actions cited by 10x involved different counsel at a different law firm.  Because one of the law firms Bio-Rad employs agreed to a prosecution bar in other cases does not establish that *every* firm Bio-Rad uses must agree to a prosecution bar now and forever.[2]  Indeed, the 152 action cited by 10x was filed five years ago, a time that presented substantially different market conditions.  Indeed, the Plaintiff at the time was RainDance, a company that Bio-Rad acquired in 2017.  That RainDance assented to a prosecution bar five years ago is irrelevant to whether outside counsel for Bio-Rad today must assent to an overbroad prosecution bar.

Because Defendants have not met their burden of showing good cause for issuance of their broad proposed prosecution bar, the Court should either decline to impose a patent prosecution bar or adopt Plaintiffs' proposed prosecution bar:

> Absent written consent from the Producing Party, any attorney, patent agent, or consultant of, for, or representing the Receiving Party who gains access to OUTSIDE ATTORNEYS' EYES ONLY INFORMATION shall not be involved in the prosecution of the patents asserted in this Litigation and any patent or application claiming priority to or otherwise related to the patents asserted in this Litigation.

---

[2] 10x also suggests below that Plaintiffs' arguments against a prosecution bar should be cast aside as merely being motivated by the desire of Plaintiffs' counsel to avoid to severe, long-term restrictions on its legal practice.  Yet, the reason the law is so overwhelmingly clear that prosecution bars may be implemented only in limited circumstances is precisely because they impose such drastic constraints on counsel.  There is nothing untoward or impure about opposing a prosecution bar on this basis.

**Stilla's Position Regarding the Scope of the Prosecution Bar in the Protective Order**

The scope of the prosecution bar in this case should be defined based on the subject matter that will be the focus of discovery, namely: "droplet microfluidics and/or nucleic acid amplification and/or analysis, including digital PCR."  Plaintiffs have agreed to the inclusion of a prosecution bar in the protective order, but propose a bar that is limited to patent applications related to the patents asserted in this case.  Plaintiffs' proposed bar is far too narrow, as it would prohibit ongoing prosecution only of related applications, and would not restrict prosecution of unrelated applications covering the exact same subject matter.  The prosecution bar should be defined by subject matter of an application, not the procedural question of whether it is related to another patent or not.

In determining whether to a grant a patent prosecution bar, a district court "must balance this risk [of inadvertent disclosure] against the potential harm to the opposing party from restrictions impose on the party's right to have the benefit of counsel of its choice."  *In re Deutsche Bank Tr. Co. Am.*, 605 F.3d 1373, 1380 (Fed. Cir. 2010).  "In balancing these conflicting interests[,] the district court has broad discretion to decide what degree of protection is required."  *Id.*  Plaintiffs' reliance on *In re Deutsche Bank* misses the point, as Defendants are not seeking to impose a per se rule with respect to prosecution bars—Defendants' proposed prosecution bar has limited scope and only applies when Outside Attorneys' Eyes Only Information is exchanged.

Defendants expect to produce highly sensitive technical information, whose potential applications go well beyond the specific products and patents in this case.  Defendants' proposed bar is narrowly tailored to these specific applications.  For example, Defendants' accused products use innovative and proprietary droplet formation technology that could readily apply to

other droplet microfluidics applications.   Defendants' products use proprietary technology for implementing nucleic acid amplification and analysis in droplets that is also broadly applicable outside of the droplet-based digital PCR realm.   It would thus be inappropriate for Plaintiffs' counsel to actively draft patent claims across these broader fields of droplet microfluidics and/or nucleic acid amplification and/or analysis, including digital PCR—the fields where Defendants' proprietary technical information could be applied, even inadvertently.   Having learned of Defendants' proprietary microfluidics and PCR technology, Plaintiffs' counsel could not unlearn this highly relevant information if allowed to prosecute other unrelated patent applications in these relevant fields.   *See In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."); *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 WL 197811, at *3 (N.D. Cal. Jan. 20, 2011) ("[I]n determining the scope of the proposed prosecution bar, the relevant question is not to which field the accused products are currently limited, but instead in which fields the patented technology ***reasonably could be used***, i.e. the areas of technology where there is risk that individuals may inadvertently exploit their new knowledge in future patent prosecution." (emphasis added)).

Defendants' proposed prosecution bar is also narrowly tailored because the parties agreed to explicitly carve out from the bar a number of litigation-related activities, such as participation in IPRs, reissue protests, ex parte reexaminations, inventor interviews, preparing a patent owner's declarants for depositions, taking depositions of an accused infringer's declarants, discussing discovery in proceedings challenging the validity of the patents-in-suit, and reviewing inventors' documents relating to conception and reduction to practice.   Thus, Defendants'

proposed bar will cause Plaintiffs' counsel no hardship in this litigation. Defendants' proposed prosecution bar would only prevent Plaintiffs' counsel from actual prosecution activities, and only for patent applications in those specific fields where Defendants' proprietary technology has potential applications. *See Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS, 2019 WL 343242, at \*4 (D. Mass. Jan. 25, 2019) (Cabell, M.J.), reconsideration denied, 392 F. Supp. 3d 138 (D. Mass. 2019) (noting that "limit[ing] the subject matter covered by the bar to the subject matter of the patent-in-suit [is] consistent with the scope allowed by other courts"); *Cherdak v. Koko Fitclub, LLC*, No. CIV.A. 14-10371-IT, 2015 WL 1895992, at \*3 (D. Mass. Apr. 27, 2015) (Dein, M.J.), aff'd, No. 14-CV-10371-IT, 2015 WL 3505259 (D. Mass. June 3, 2015) (finding "the 3 year period, and limitation to the subject matter of this litigation, to be appropriate").

Plaintiffs' repeated citations to case law regarding "competitive decision-making" are inapposite. To be clear, the dispute here is the *scope* of the prosecution bar, not *who* can have access to the parties' confidential technical information. For that reason, *MedImmune* is not relevant. In *MedImmune*, the issue was whether MelImmune's patent counsel should have access to Centocor's confidential information, rather than what level of protections should be afforded upon the sharing of such confidential information. *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp.2d 762, 774-75 (D. Md. 2003). Here, Defendants do not seek to wholly deny Plaintiffs' litigation counsel access to Defendants' confidential technical information.[3] *Kraft Foods Global* is also distinguishable: Defendants' proposed prosecution bar is narrowly tailored

---

[3] Likewise, *Tech Pharmacy Services* is not applicable. Defendants there objected to the involvement of one of plaintiff's litigation counsel who also prosecuted the patent-in-suit, whereas here, the only dispute is the *scope* of a prosecution bar. *Tech Pharmacy Services, LLC v. Alixa RX LLC*, 2016 WL 6071601, \*2 (E.D. Tex. 2016).

and sets forth "the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Kraft Foods Glob., Inc. v. Dairilean, Inc.*, No. 10 C 8006, 2011 WL 1557881, at *4 (N.D. Ill. Apr. 25, 2011). *See also Regal Beloit Am., Inc. v. Broad Ocean Motor LLC,*, No. 4:16-CV-00111-JCH, 2017 WL 35702, at *3 (E.D. Mo. Jan. 4, 2017) (rejecting a proposed prosecution bar that was unlimited in subject matter); *Adelos, Inc. v. Halliburton Co. and Halliburton Energy Services, Inc.*, 2017 WL 3836131, *5-6 (D. Mont. 2017) (evaluating whether or not to adopt a bar, as opposed to the appropriate scope of a bar).

Plaintiffs' reliance on *Fontem Ventures* also misses the point. The technology involved in *Fontem* was "publicly available and subject to reverse engineering," and Reynolds did not agree to produce any materials relating to future products and technology. *Fontem B.V. v. R.J. Reynolds Vapor Co.*, No. 1:16-CV-1255, 2017 WL 2266868, at *2 (M.D.N.C. May 23, 2017). In contrast, Defendants will produce their sensitive technical information and such information has application beyond the specific products in the case.[4]

Accordingly, the Court should adopt the following prosecution bar in entering the Protective Order in this case:

> Absent written consent from the Producing Party, any attorney, patent agent, or consultant of, for, or representing the Receiving Party who gains access to OUTSIDE ATTORNEYS' EYES ONLY INFORMATION shall not be involved in the prosecution of patents or patent applications in the fields of droplet microfluidics and/or nucleic acid amplification and/or analysis, including digital PCR.

---

[4] *J & M Indus.* is also distinguishable because it involved "a low-tech, publicly available strapping systems [sic] . . . and their advertising, sale, and use in the marketplace." *J & M Indus., Inc. v. Raven Indus., Inc.*, No. 16-2723-JTM-KGG, 2017 WL 3048919, at *5 (D. Kan. July 18, 2017).

**10X's Position Regarding the Scope of the Prosecution Bar in the Protective Order for *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, Case No. 1:19-cv-12533-WGY**

Plaintiffs, Stilla, and 10X each propose different scopes for the prosecution bar, as detailed in the below chart. Plaintiffs and Stilla propose prosecution bars that end one year after final termination of the Stilla Action. 10X proposes a prosecution bar that ends two years after final termination of the 10X Massachusetts Action. *See* Exhibit B. Bio-Rad, Lawrence Livermore National Security, LLC ("Lawrence Livermore"), and the University of Chicago have agreed in previous suits against 10X to two-year prosecution bars. *See, e.g.*, *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, Case No. 1:18-cv-1679-RGA (D. Del.) ("1679 Action"); *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, Case No. 1:15-cv-152-RGA (D. Del.) ("152 Action"); *Certain Microfluidic Devices*, Inv. No. 337-TA-1068 ("1068 Investigation"). The same reasons supporting two-year prosecution bars in the previously filed litigations apply here.

| Stilla Action | | 10X Massachusetts Action | |
| --- | --- | --- | --- |
| Plaintiffs' Proposed Scope | Stilla's Proposed Scope | Plaintiffs' Proposed Scope | 10X's Proposed Scope |
| the patents asserted in this Litigation and any patent or application claiming priority to or otherwise related to the patents asserted in this Litigation | patents or patent applications in the fields of droplet microfluidics and/or nucleic acid amplification and/or analysis, including digital PCR | the patents asserted in this Litigation (i.e., 10X Massachusetts Action) and any patent or application claiming priority to or otherwise related to the patents asserted in this Litigation (i.e., 10X Massachusetts Action) | patents or patent applications relating to droplets in microfluidic devices |

Stilla and 10X agree that Plaintiffs' proposed prosecution bar, which is limited to the patents-in-suit and their families, is far too narrow, as it would not bar prosecution of patents covering the same subject matter as the patents-in-suit. Plaintiffs' arguments to the Court here

are incompatible with the history between 10X and Bio-Rad, including express arguments Bio-Rad has made in previously filed litigations.

"[T]he moving party [here 10X] must show that the proposed bar 'reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information.'" *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, Civil Action No. 16-CV-10860-PBS, 2019 U.S. Dist. LEXIS 12833, at *6-7 (D. Mass. Jan. 25, 2019) (Cabell, M.J.) (quoting *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1381 (Fed. Cir. 2010)), *reconsideration denied*, 392 F. Supp. 3d 138 (D. Mass. 2019).[5] To determine "reasonableness, the court looks to the following factors: 'the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar." *Id.* at *7 (quoting *Deutsche Bank*, 605 F.3d at 1381). 10X expects to produce highly sensitive technical information about its Next GEM product that is not limited only to the accused features and thus goes beyond the specific patent families at issue in this case, and the information protected by the bar is limited to highly confidential information designated OUTSIDE ATTORNEYS' EYES ONLY INFORMATION. 10X's proposed prosecution bar is tailored to "patents or patent applications relating to droplets in microfluidic devices," the specific technology at issue here, and would end two years after final determination in the Massachusetts Action. Further, "representing a party challenging a patent in a proceeding before a domestic agency (including a reissue protest, ex parte reexamination, inter partes review, post-grant review, or inter partes reexamination) or representing a party defending a patent that has been challenged in a proceeding before a domestic agency (including a reissue protest, ex parte reexamination, inter partes review, post-grant review, or inter partes reexamination), to the extent the counsel's activities do not include

---

[5] "[W]hether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law." *In re Deutsche Bank*, 605 F.3d at 1378.

the drafting or amending of patent claims, or advising others regarding the drafting or amendment of patent claims" are activities specifically excluded from 10X's proposed prosecution bar. Exhibit B. "Limit[ing] the subject matter covered by the bar to *the subject matter of the patent[s]-in-suit* [is] consistent with the scope allowed by" other sessions of this Court. *See Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS, 2019 U.S. Dist. LEXIS 12833, at *10 (D. Mass. Jan. 25, 2019) (Cabell, M.J.), *reconsideration denied*, 392 F. Supp. 3d 138 (D. Mass. 2019); *see also Cherdak v. Koko Fitclub, LLC*, No. 14-10371-IT, 2015 U.S. Dist. LEXIS 54621, at *10 (D. Mass. Apr. 27, 2015) (finding a prosecution bar's "3 year period, and limitation to *the subject matter of this litigation*, to be appropriate"); *Voice Domain Techs., LLC v. Apple, Inc.*, No. 13-40138-TSH, 2014 U.S. Dist. LEXIS 143903, at *18-19 (D. Mass Oct. 8, 2014) (entering a prosecution bar with a 2-year period and limited to the subject matter of the litigation, "the functionality, operation, and design of software or hardware for data entry, voice recording, dictation, processing voice commands, converting speech to text, natural language processing, and/or interacting with a device (generally or as described in any patent in suit)").

Because 10X has met its burden, "the burden then shifts to the [non-movant] [here Plaintiffs] to show that 'counsel-specific balancing' favors exemptions for particular counsel.'" *Intellectual Ventures I*, 2019 U.S. Dist. LEXIS 12833, at *7. This is so, at least in part, because parties seeking a prosecution bar "would have little to no knowledge of the day-to-day practice for any particular attorney for the opposing party…. Further, as a practical matter, it is difficult for a party without any information on opposing counsel beyond their website biographies to demonstrate a risk of inadvertent disclosure on a counsel-by-counsel basis." *Id.* at *8 (internal quotation omitted). Plaintiffs have failed to meet *their burden* to "show on a counsel-by-counsel

15

basis: (1) that counsel's representation of the client in matters before the PTO ***does not and is not likely to implicate competitive decisionmaking***[6] related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *Deutsche Bank*, 605 F.3d at 1381. As Stilla explained above, Plaintiffs' repeated citations to case law regarding "competitive decisionmaking" are inapposite. It is Plaintiffs' burden to show its counsel's representation does not and is not likely to implicate competitive decisionmaking, not 10X's burden to show the opposite.

Plaintiffs' attempt to strip 10X's protections is incompatible with the history between 10X and Bio-Rad. 10X and Bio-Rad are direct competitors in the droplet single-cell product market. Bio-Rad has previously and as recently as August 2, 2019, agreed to the exact prosecution bar provision that 10X proposes in this case, barring "prosecution of patents or patent applications relating to droplets in microfluidic devices," in the 1679 Action.[7] The same 10X Next GEM platform that Bio-Rad accuses of patent infringement in this case is the one Bio-Rad accuses of infringement in the 1679 Action, and the parties are negotiating cross-use of the productions from that action for the 10X Massachusetts Action. Having a less rigorous protection for 10X's highly confidential information in this case would be an end-run of the protections to

---

[6] The Federal Circuit has "defined competitive decisionmaking as: [S]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *In re Deutsche Bank*, 605 F.3d at 1378 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)).

[7] The only difference between the prosecution bar that Bio-Rad already agreed to include in the 1679 Action and the prosecution bar it is resisting here is that the terminology for Protected Information is "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" in this case and is "HIGHLY CONFIDENTIAL" in the 1679 Action.

which Bio-Rad agreed in the 1679 Action. Bio-Rad and the University of Chicago (a Plaintiff in

the Stilla Action), and their lead counsel in the 152 Action, who is the same lead counsel in the

10X Massachusetts Action, agreed to a similar provision on June 28, 2016, barring "prosecution

of patents or patent applications relating to reactions in plugs or droplets in microfluidic

devices." 152 Action, ECF No. 64. Bio-Rad and Lawrence Livermore (a Plaintiff in the Stilla

Action) also agreed on April 11, 2018, to a similar provision barring "prosecution of patents or

patent applications relating to creating droplets in microfluidic devices later used in next

generation sequencing reactions" in the 1068 Investigation. Further, Bio-Rad, Lawrence

Livermore, and 10X filed a motion to amend the protective order in the 1068 Investigation "to

provide for enhanced confidentiality protections from source code and restricted patent

prosecution by *competitive decision-makers*" and asserted that "good cause exists for

supplementing the protective order to provide restricted patent prosecution by *competitive*

*decision-makers*." Complainants and Respondent's Unopposed Motion to Amend the Protective

Order (Order No. 1), 1068 Investigation DocID 641708, at 10, 1, 4 (Apr. 11, 2018) (emphasis

added). Plaintiffs have failed to show how counsel's representation here differs from Bio-Rad

and Lawrence Livermore's counsel in the 1068 Investigation, such that counsel here are not

competitive decision-makers.

During the February 3 meet and confer between the parties in the 10X Massachusetts

Action regarding the parties' proposed e-discovery and protective orders, counsel for Plaintiffs

stated that the reason for Plaintiffs' proposed prosecution bar was to protect counsel's own law

practice. When 10X counsel pointed out on the meet and confer that the 152 Action prosecution

bar, almost identical in scope to the prosecution bar 10X proposes in the 10X Massachusetts

Action, already applied to Plaintiffs' counsel because he was also counsel in the 152 Action, he

asserted that he did not wish to continue to extend the duration of the 152 Action prosecution bar against him with later-filed lawsuits between Bio-Rad and 10X, like the 10X Massachusetts Action. Neither of these reasons have anything to do with Plaintiffs' interests, but instead are intended to serve only counsel's interests.

Plaintiffs' proposed prosecution bar would not cover even the patents-at-issue in the previously filed patent proceedings between Bio-Rad and 10X because most of those patents, even if covering the same subject matter, are in families different from the patents-in-suit.[8] Plaintiffs have sued 10X on two patent families in this case, and eight other patent families across three other district court cases and one ITC case. Including the patents Bio-Rad has asserted against Stilla, there are a dozen patent families. Further, the parties are currently negotiating to have the document productions in previously filed proceedings between 10X and Bio-Rad deemed produced in this case to avoid the unnecessary waste of time and resources to produce the documents again here. The documents produced in this case, and certainly the deemed produced documents from previously filed proceedings, should be protected by a prosecution bar that covers the subject matter at issue, droplets in microfluidics devices, not just specific patent families. At the very least documents deemed produced from the 1679 Action should remain protected by the prosecution bar provision in the 1679 Action. 10X's proposed prosecution bar would provide such protection; Plaintiffs' would not. Counsel in this case should be barred from advising on claim scope for patent applications covering the subject matter at

---

[8] Previously filed patent proceedings between Bio-Rad and 10X include: *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, Case No. 18-1679-RGA (D. Del.) ("1679 Action"), *Certain Microfluidic Devices*, Inv. No. 337-TA-1068 ("1068 Investigation"); *Certain Microfluidic Systems*, Inv. No. 337-TA-1100 ("1100 Investigation"); *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, Case No. 1:15-cv-00152 (D. Del.) ("152 Action"); *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, Case No. 3:17-cv-4339 (N.D. Cal.); *10X Genomics, Inc. v. Bio-Rad Labs., Inc.*, Case No. 4:18-cv-209 (N.D. Cal.).

issue in the 10X Massachusetts Action that are currently being prosecuted at the PTO in patent families from which Bio-Rad has already sued 10X. Again, 10X's proposed prosecution bar would provide such protection; Plaintiffs' would not. Plaintiffs' proposed prosecution bar is unworkable here. It is simply too narrow to provide any real protection from the high risk of inadvertent use in patent prosecution of confidential information learned in litigation.

The Court may determine that OUTSIDE ATTORNEYS' EYES ONLY INFORMATION produced in this action and such information produced in the Stilla case should be given different prosecution-bar protection because the two cases involve overlapping, but not identical, patents-in-suit and thus may involve overlapping, but not identical, subject matter. *See Intellectual Ventures I*, 2019 U.S. Dist. LEXIS 12833, at *11-12 (permitting defendant EMC to designate documents as subject to an acquisition bar, but not permitting other defendants, Lenovo entities and NetApp, to use the acquisition bar for any of their production). Plaintiffs have asserted three patents against 10X, only one of which overlaps with the four patents Plaintiffs have asserted against Stilla. Further, 10X has filed counterclaims asserting that Bio-Rad is infringing two additional patents, also not at issue in Stilla. Finally, Stilla and Bio-Rad do not share the same history that 10X and Bio-Rad do, with multiple prosecution bars and multiple document productions from previously filed litigations between 10X and Bio-Rad that likely will be deemed produced in this case.

Accordingly, the Court should adopt the prosecution bar in Exhibit B in entering the Protective Order in the 10X Massachusetts Action, which states in part:

> Absent written consent from the Producing Party, any attorney, patent agent, or paralegal for or representing a party who receives access to OUTSIDE ATTORNEYS' EYES ONLY INFORMATION shall not be involved in the prosecution of patents or patent applications relating to droplets in microfluidics devices….

***

A draft Proposed Protective Order in *Bio-Rad Laboratories, Inc. v. Stilla Technologies, Inc.*, No. 1:19-cv-11587-WGY, is attached as Exhibit A.  Plaintiffs' and Stilla's proposals are included in Section 7.2 at page 12.  Plaintiffs and Stilla respectfully request the Court rule on the proposed scope of the Protective Order and re-enter the Protective Order in this case, *Bio-Rad Laboratories, Inc. v. Stilla Technologies, Inc.*, No. 1:19-cv-11587-WGY.

10X's proposed prosecution bar provision in *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, No. 1:19-cv-12533-WGY, is attached as Exhibit B. 10X respectfully requests the Court adopt 10X's proposed prosecution bar provision in *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, No. 1:19-cv-12533-WGY.


Dated:  February 10, 2020                    Respectfully submitted,


                                             */s/ Derek C. Walter*
                                             Patrick J. O'Toole, Jr. (BBO# 559267)
                                             WEIL, GOTSHAL & MANGES LLP
                                             100 Federal Street, Floor 34
                                             Boston, MA 02110
                                             Telephone: 617-772-8300
                                             Facsimile: 617-772-8333
                                             patrick.otoole@weil.com

                                             Derek C. Walter (CA State Bar No. 246322)
                                             WEIL, GOTSHAL & MANGES LLP
                                             201 Redwood Shores Parkway
                                             Redwood Shores, CA 94065
                                             Telephone: 650-802-3000
                                             Facsimile: 617-772-8333
                                             derek.walter@weil.com

                                             *Attorneys for Plaintiffs*
                                             *Bio-Rad Laboratories, Inc., the University of*
                                             *Chicago, Lawrence Livermore National Security,*
                                             *LLC, and President and Fellows of Harvard*
                                             *College*

20

*/s/ Whitney A. Reichel*
Whitney A. Reichel (BBO #663599)
Elizabeth G.H. Ranks (BBO #693679)
Qiuyi Wu (BBO #704069)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
wreichel@fr.com
liz.ranks@fr.com
qwu@fr.com
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

Juanita R. Brooks (*Pro Hac Vice*)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
brooks@fr.com
(858) 678-5070 Telephone
(858) 678-5099 Facsimile

*Attorneys for Defendants*
*Stilla Technologies, Inc. and*
*Stilla Technologies*

*/s/ Matthew D. Powers*
Matthew D. Powers (*pro hac vice*)
Paul T. Ehrlich (*pro hac vice*)
Stefani C. Smith (*pro hac vice*)
Robert L. Gerrity (*pro hac vice*)
Jennifer K. Robinson (*pro hac vice*)
Natasha M. Saputo (*pro hac vice*)
Utsav Gupta (*pro hac vice*)
Daniel Radke (*pro hac vice*)
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:     (650) 802-6000
Facsimile:     (650) 802-6001
10x_BR_MA_Service@tensegritylawgroup.com

Azra M. Hadzimehmedovic (*pro hac vice*)
Aaron M. Nathan (pro hac vice)
Samantha A. Jameson (pro hac vice)
TENSEGRITY LAW GROUP, LLP
8260 Greensboro Drive, Suite 260
McLean, VA  22102
Telephone:     (703) 940-5032
Facsimile:      (650) 802-6001
10x_BR_MA_Service@tensegritylawgroup.com

Sarah Chapin Columbia (BBO #550155)
Katherine Nicole Clouse (BBO #683177)
Katrina Rogachevsky (BBO # 691373)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58,
Boston, MA 02116-5021
Telephone:     (617) 535-4000
Facsimile:      (617) 535-3800
10X-BR-MWE@mwe.com

Leah Brannon (pro hac vice)
Kenneth Reinker (pro hac vice)
CLEARY GOTTLIEB
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone:     (202) 974-1500
Facsimile:      (202) 974-1999
lbrannon@cgsh.com
kreinker@cgsh.com

**Attorneys for Non-Party 10X Genomics, Inc.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document(s) filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on this 10th day of

February, 2020.

> */s/  Whitney A. Reichel*
> Whitney A. Reichel