## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIO-RAD LABORATORIES, INC., THE UNIVERSITY OF CHICAGO, LAWRENCE LIVERMORE NATIONAL SECURITY, LLC, AND PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>                    Plaintiffs,<br><br>        v.<br><br>STILLA TECHNOLOGIES, INC. AND STILLA TECHNOLOGIES,<br><br>                    Defendant. | Civil Action No. 1:19-cv-11587-WGY |

### JOINT [PROPOSED] JURY INSTRUCTIONS

These instructions are based on the current state of the case. The parties reserve the right to request the Court make changes to these instructions based on how the trial progresses and the evidence that is admitted.

## <u>TABLE OF CONTENTS</u>

**Page**

1.  GENERAL INSTRUCTIONS ........................................................................................2

  1.1.  INTRODUCTION ............................................................................2

  1.2.  JURORS' DUTIES ...........................................................................3

  1.3.  EVIDENCE DEFINED .....................................................................5

  1.4.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ...........................................8

  1.5.  CREDIBILITY OF WITNESSES ..........................................................9

  1.6.  EXPERT WITNESSES .....................................................................11

  1.7.  DEPOSITION IN LIEU OF LIVE TESTIMONY ................................................12

  1.8.  REMOTE TESTIMONY IN LIEU OF IN PERSON TESTIMONY ...................13

  1.9.  EXHIBITS AND DEMONSTRATIVE EXHIBITS ...........................................14

  1.10.  USE OF NOTES ...........................................................................15

2.  THE PARTIES AND THEIR CONTENTIONS .................................................16

3.  BURDENS OF PROOF ............................................................................18

4.  PATENT CLAIMS ....................................................................................20

  4.1.  THE ROLE OF CLAIMS IN THE PATENT ........................................20

  4.2.  INDEPENDENT AND DEPENDENT CLAIMS ................................................21

  4.3.  CONSTRUCTION OF CLAIMS ...........................................................23

  4.4.  MEANS-PLUS-FUNCTION CLAIMS .....................................................24

  4.5.  OPEN ENDED OR "COMPRISING" CLAIMS ................................................25

5.  INVALIDITY ........................................................................................26

  5.1.  PERSON OF ORDINARY SKILL IN THE ART ...................................27

5.2.    PRIOR ART....................................................................................................28

5.3.    ANTICIPATION ............................................................................................29

5.4.    OBVIOUSNESS .............................................................................................31

5.5.    WRITTEN DESCRIPTION.............................................................................35

5.6.    ENABLEMENT ..............................................................................................37

6.    INFRINGEMENT......................................................................................................39

6.1.    INFRINGEMENT GENERALLY....................................................................39

6.2.    DIRECT INFRINGEMENT ............................................................................40

6.3.    CONTRIBUTORY INFRINGEMENT .............................................................41

6.4.    INDUCED INFRINGEMENT...........................................................................42

6.5.    INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS................44

7.    WILLFUL INFRINGEMENT ...................................................................................46

8.    DAMAGES..................................................................................................................48

8.1.    DAMAGES—GENERALLY...........................................................................48

8.2.    REASONABLE ROYALTY AS A MEASURE OF DAMAGES......................50

8.3.    FACTORS FOR DETERMINING A REASONABLE ROYALTY...................52

8.4.    USE OF COMPARABLE LICENSE AGREEMENTS ......................................54

8.5.    DAMAGES – INCREMENTAL VALUE..........................................................55

9.    DELIBERATIONS AND VERDICT ........................................................................57

10.    UNANIMOUS VERDICT..........................................................................................59

11.    DUTY TO DELIBERATE .........................................................................................61

12.    SOCIAL MEDIA ........................................................................................................62

13.    COURT HAS NO OPINION......................................................................................63

Plaintiffs Bio-Rad Laboratories, Inc., the University of Chicago, and Lawrence Livermore National Security, LLC, and Presidents and Fellows of Harvard College ("Plaintiffs") and defendants Stilla Technologies, Inc. and Stilla Technologies ("Stilla" or "Defendants") (hereafter, Plaintiffs and Stilla may be referred to together as the "Parties") hereby submit the following Joint [Proposed] Final Jury Instructions for the trial in this matter.  The patents at issue in this case are U.S. Patent No. 9,968,933 ("the '933 Patent"), U.S. Patent No. RE41,780 ("the '780 Patent"), U.S. Patent No. 8,871,444 ("the '444 Patent"), and U.S. Patent No. 9,127,310  ("the '310 Patent").  The titles for each instruction identify whether that particular instruction is submitted as a "Joint" or "Contested" instruction.  If an instruction is "Contested," then there is an additional designation specifying whether its "Plaintiffs' Instruction" or "Stilla's Instruction."  Where the Parties agree on the inclusion of an instruction and are generally in agreement on its wording but there remains some dispute over the exact language, differential color highlighting is used.  Specifically, text highlighted in yellow is text that Plaintiffs propose adding to the instructions to which Stilla does not agree. Text highlighted in blue is text that Stilla proposes adding to the instructions to which Plaintiffs do not agree.

The Parties reserve all rights to supplement, amend, or otherwise modify these proposed instructions as appropriate, including but not limited to the right to revise their positions on the proposed instructions in response to future rulings by the Court or the evidence as it is admitted at trial.  The parties submit these proposed jury instructions without waiver of their position that the opposing party has not presented sufficient evidence to submit some or all of its affirmative claims, damages theories, or affirmative defenses to the jury, and without waiver of arguments presented in motions *in limine* or during claim construction.

# 1.    GENERAL INSTRUCTIONS

## 1.1.    INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to these instructions as I give them to you now.

**Authorities:**

Charge to the Jury at 1, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Final Jury Instructions at 1, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323; Final Jury Instructions at 1, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719.

## 1.2.    JURORS' DUTIES

In defining the duties of the jury, let me first explain the general rules.

It is your duty to find the facts from all of the evidence in the case.  I will describe the law to you, and you must apply the law to the facts as you find them.  You must follow the law as I describe it, whether or not you personally agree with the wisdom of the law.  This instruction is a fundamental part of our system of government by law, rather than by the individual views of the judge and jury.  It is your duty as jurors to decide the case fairly and impartially, regardless of any personal likes or dislikes, opinions, prejudices, bias, or sympathy for one party or another.  You must make your decision based solely on the evidence before you, and according to the law.

In following my instructions, you must follow all of them.  They are all equally important. The lawyers are allowed to comment both on the evidence and on the rules of law in their opening and closing statements.  But if what they have said about the evidence differs from your memory, let your collective memory control.  If what they have said about the law seems to differ in any way from my instructions, you must be guided only by my instructions.  You must not read into these instructions, or into anything that I may have said or done during the course of the trial, any suggestion from me as to the verdict you should return.  Whatever opinion I might have as to what your verdict should be is utterly irrelevant.  The verdict is yours, and yours alone, to render as the finders of the facts.  While I intend to be as helpful as I can in providing you with the knowledge of the law that you will require to render an intelligent and informed verdict, the law commits this case to your sole determination as the judges of the facts.

"Plaintiff," you will recall, is the name we give to the person or entity who brings a lawsuit. The Plaintiffs in this case are Bio-Rad Laboratories, Inc. ("Bio-Rad"), the University of Chicago, Lawrence Livermore National Security, LLC, and Presidents and Fellows of Harvard College.

Each of these entities holds a patent in this suit.  In addition to holding a patent in this suit, Bio-Rad has an exclusive license to practice the other three patents in this suit.  We refer to the party sued as the "Defendant."  In this case, the Defendants are Stilla Technologies, Inc. and Stilla Technologies (collectively, "Stilla").  You should consider this case as a dispute between parties of equal standing in the community, of equal worth, and equally entitled to a fair trial.  All persons, including companies based both in and outside of the United States, stand equal before the law and are to be treated as equals.

**<u>Authorities:</u>**

Charge to the Jury at 2-3, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473.

**1.3.    EVIDENCE DEFINED**

Before I turn to the applicable principles of law, let me first briefly review for you what is and is not evidence in a civil case.

Evidence is presented at a trial in one of four ways:

First, through the sworn testimony of witnesses, on both direct and cross-examination;

Second, evidence is presented through physical objects, such as documents, photographs, and videotapes that are identified by a witness and admitted as exhibits during the trial;

Third, evidence is presented by stipulation—that is, by agreement between the parties that certain facts are true and need not be independently proven as such at trial; and

Fourth, any facts that are judicially noticed—that is, facts I say you must accept as true even without other evidence.

Certain things are not evidence:

1. Arguments and statements by lawyers are not evidence.  What the lawyers have said over the course of the trial you may find helpful, even persuasive, but the facts are to be determined from your own evaluation of the testimony of the witnesses and exhibits, and from any reasonable inferences that you choose to draw from the facts as you find them.

2. Questions to the witnesses are not evidence and may only be considered in the sense that they give context or meaning to a witness's answer.

3. Objections to questions are not evidence.  Attorneys have a duty to their clients to object when they believe that a question is improper under the rules of evidence.  You should not be influenced by the fact that an objection was made.  If I sustained the objection, you should ignore the lawyer's question, and any assertion of fact it might have contained.  If I overruled the objection, you should treat the witness's answer like any other.

4. Testimony that I excluded, struck, or which I instructed you to disregard is not evidence. If you heard an answer to the question before my ruling sustaining an objection, you are to disregard it—that answer is not evidence.  You should also ignore editorial comments made by the attorneys during their presentations, particularly those intended to characterize the testimony of witnesses.  Whether or not a witness's testimony was believable on any particular point is a determination that only you can make.  If you were instructed that some item of evidence was received for a limited purpose only, you must follow that instruction.

5. Notes, if you have kept them are not evidence. They are a personal memory aid to be used to refresh your recollection of the evidence during the deliberations.

6. Finally, anything you may have seen or heard outside the courtroom during the course of the trial is not evidence.

You must make your decision based only on the evidence that you saw and heard in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Authorities:**

Charge to the Jury at 4-5, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Third Circuit Model Jury Instructions No. 1.5 (2017) (modified to past tense); Final Jury Instructions at 4, *Amgen, Inc. v. Hospira, Inc.*, Civ. A.

No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323; Final Jury Instructions at 7, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719.

## 1.4.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct and circumstantial. An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses—something the witness has seen, felt, touched, heard, or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

Circumstantial evidence is indirect evidence—that is, proof of a fact or facts from which you could draw a reasonable inference that another fact exists, even though it has not been proven directly.   You all have experience in your everyday life drawing inferences based upon circumstantial evidence.  For instance, imagine it was sunny when you arrived here this morning, but just now someone walked into the courtroom wearing a wet raincoat and carrying a dripping umbrella. Without any words being spoken, and without looking outside for yourself, you might draw the reasonable inference that it is now raining outside.  In other words, the facts of the wet raincoat and the dripping umbrella would be circumstantial evidence that it is raining.

You are entitled to consider both direct and circumstantial evidence.  Neither type of evidence is considered superior or inferior to the other. The law permits you to give equal weight to both; it is for you to decide how much weight to give to any piece of evidence.

**Authorities:**

Charge to the Jury at 5-6, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Third Circuit Model Jury Instructions No. 1.6 (2017) (modified to past tense).

**1.5.    CREDIBILITY OF WITNESSES**

Much of the evidence received in this case was offered through witness testimony.  As the jury, you are the sole judges of the credibility of the witnesses.  You do not have to accept the testimony of any witness if you find the witness not credible.  In deciding what the facts are, you must determine what testimony you believe and what testimony you do not believe.  To do this, you must look at all the evidence, drawing upon your common sense and personal experience. You may choose to believe everything a witness said, only part of it, or none of it.

In deciding whether to believe a witness's testimony, you may consider a number of factors, such as:

- the witness's conduct and demeanor while testifying;

- the witness's apparent fairness, or any bias he or she may have displayed;

- any interest you discern that the witness may have in the outcome of the case;

- any motive, bias, or prejudice the witness may have shown;

- the witness's opportunity to see, hear, or know the things about which he or she testified;

- the reasonableness of the events that the witness related to you, in light of the other evidence which you believe;

- the quality of the witness's understanding and memory; and

- any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict the witness's version of the events, including anything the witness said or wrote before trial.

**<u>Authorities:</u>**

      Charge to the Jury at 6-7, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Third Circuit Model Jury Instructions No. 1.7 (2017).

1.6.    **EXPERT WITNESSES**

During the trial, you heard testimony from expert witnesses.  When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters.  The expert witnesses that you heard from in this case were Juan Santiago, Carl Batt, Bruce Gale, James Malackowski, and Robert Maness.

Just like any other evidence, you may accept or reject an expert's testimony in whole or in part. In weighing expert testimony, you should consider the factors that generally bear upon the credibility of witnesses, the expert's education and experience, the soundness of the reasons given for the opinion, and any other evidence in the case that you find is pertinent. You also should evaluate the basis for the opinion, and the extent to which the expert's education and experience support the opinion. If the opinion given by any expert relied on facts that you find were not proven, then you must disregard the opinion to the extent that it relied on such facts. Remember that you alone decide how much of a witness's testimony to believe, and how much weight it should be given. You should not accept a witness's testimony merely because he is an expert, nor should you substitute it for your own reason, judgment, and common sense. Remember that you alone determine the facts in this case.

<u>**Authorities:**</u>

Charge to the Jury at 7, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Final Jury Instructions at 7, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA, D.I. 323 (D. Del. Sept. 22, 2017), ECF No. 323.

**1.7.    DEPOSITION IN LIEU OF LIVE TESTIMONY**

The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony.   All three are acceptable forms of testimony.   A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

**<u>Authorities:</u>**

AIPLA Model Patent Jury Instructions, § II.3 (2019).

**1.8.     REMOTE TESTIMONY IN LIEU OF IN PERSON TESTIMONY**

When a person is unavailable to testify at trial in person, the remote trial testimony of that person may be allowed.  During the course of the trial, you heard Dr. Dangla and Dr. Fradet testified on behalf of Stilla via video.  These witnesses were placed under oath to tell the truth. They testified live and the questions and answers were recorded.  Their remote testimony is entitled to the same consideration as if they had been present to testify in person.

**Authorities:**

AIPLA Model Patent Jury Instructions, § II.3 (2019) (modified to address remote trial testimony); Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § II 2.4 (last updated Mar. 2021) (modified to address remote trial testimony).

## 1.9.    EXHIBITS AND DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.  Some of these admitted exhibits or portions of them have been displayed for you on a screen and you will have these admitted exhibits, whether displayed on a screen or not, in the jury room during your deliberations.  You decide the weight, if any, to give to each document.  That is, you may credit all of a document, a portion of a document or none of a document.  In evaluating the believability of the statements or assertions in a document, you should consider all of the surrounding circumstances.  Among other factors, you may consider: the author of the document; the believability of the author; when the document was created; the purpose(s) for which the document was created; whether the document was created in anticipation of litigation; whether the statements in the document are contradicted by anything else; and/or whether the statements in the document are reasonable or unreasonable, probable or improbable in light of all the other evidence in the case.

There are other exhibits (including charts and animations presented by attorneys and witnesses) that were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstrative exhibits," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

**Authorities:**

Charge to the Jury at 8, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Final Jury Instructions at 8, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323.

**1.10.   USE OF NOTES**

You may use notes taken during trial to assist your memory.  However, you should use caution in consulting your notes.  There is always a tendency to attach undue importance to matters that you have written down.  Some testimony that you may consider unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

**Authorities:**

Final Jury Instructions at 9, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323; Final Jury Instructions at 5, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719.

## 2.   THE PARTIES AND THEIR CONTENTIONS

Plaintiffs allege that Stilla infringes the '933 Patent, the '780 Patent, the '444 Patent, and the '310 Patent.  Stilla denies that it has infringed the asserted claims of these patents and contends that the asserted claims are invalid.

In this case, you must decide the issues according to the instructions I give you.  In general, the following are the issues you must decide:

    a.  Whether Stilla has proven by clear and convincing evidence that any one or more of claims 1 and 5 of the '933 Patent, claims 1, 10, and 13 of the '780 Patent, claims 1, 3 and 5 of the '444 Patent, or claims 1-3 and 9 of the '310 Patent (collectively, the "Asserted Claims") are invalid;

    b.  If you determine that Stilla has not proven invalidity of any of the Asserted Claims by clear and convincing evidence, then you must determine whether Plaintiffs have proven by a preponderance of the evidence that Stilla has infringed and/or does infringe those valid claims;

    c.  Plaintiffs propose to include the following instruction:

        i.  Whether Plaintiffs have proven by a preponderance of the evidence that Stilla's infringement of one or more of the valid Asserted Claims was willful;[1]

---

[1] **Plaintiffs' Position:** Plaintiffs believe this instruction should be included.  In the course of fact discovery, it became clear based on non-public information that Stilla knowingly and willfully infringed Bio-Rad's patents prior to the suit being filed and continues to do so. Stilla refused to provide discovery on many aspects of its willful infringement, citing privilege, and requested that Plaintiffs not recite any of the details of the evidence of its knowledge in this pretrial memorandum. Plaintiffs' respectfully request leave to conform the pleadings to the evidence of Stilla's willful infringement that Plaintiffs will present at trial. Stilla's willful infringement is

    d.   If you find Stilla infringes any of the Asserted Claims, and that those claims are not invalid, determine the amount of damages to be awarded to Plaintiffs that Plaintiffs have proven by a preponderance of the evidence would compensate Plaintiffs for any infringement.

**Authorities:**

AIPLA's Model Patent Jury Instructions, § 10.0 (2019); Final Jury Instructions, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

---

closely tied to Plaintiffs' underlying infringement claims and is evidenced by non-public information in Stilla's exclusive possession, unlike the cases Stilla cites below.

**Stilla's Position:** This instruction should not be included.  Plaintiffs did not plead willfulness in their complaint.  Nor did Plaintiffs ever seek leave from the Court to amend their complaint to add a willful infringement claim.  And in the nearly two years this case has been pending, Plaintiffs made no claim or allegation of willfulness by Stilla.  Plaintiffs did not inform Stilla that they planned to ask to amend their pleadings until less than a month prior to trial, and did not provide any justifications for the undue delay.  Plaintiffs did not seek consent to amend their pleadings during the pre-trial conference.  To date, Plaintiffs still have not filed any motion for leave to amend their pleadings.  Prior to this, Plaintiffs' position was that no party should be allowed to amend their pleadings.  At this late stage, to allow Plaintiffs to now argue that Stilla was allegedly willful would be unfairly prejudicial to Stilla, as Stilla was not on notice of this alleged claim and there was no discovery (including possible defensive discovery) into any alleged willful infringement.  *See, e.g.*, *Euro-Pro Operating LLC v. Dyson Inc.*, 164 F. Supp. 3d 235, 240 (D. Mass. 2016) (denying request to amend the pleading after close of fact discovery because "allowing an amendment at this stage of proceedings would be unduly prejudicial as it would require the reopening of fact discovery and the taking of additional depositions in support of a legal theory that Plaintiff did not attempt to advance until far too late in the life of this case"); *Resnick v. Copyright Clearance Ctr., Inc.*, 422 F. Supp. 2d 252, 256 (D. Mass. 2006) (denying motion for leave to amend the pleading based on undue delay and futility).

3.      **BURDENS OF PROOF**

For each issue in this case, either Plaintiffs or Stilla bears the burden of proof, which means that it bears the burden of persuading you to find in its favor.  In a patent case such as this, there are two different burdens of proof.  The first is called "clear and convincing evidence."  The second is called "preponderance of the evidence."

Stilla bears the burden of proof with respect to its defenses that the Asserted Claims are invalid.  It must prove patent invalidity by clear and convincing evidence.  This is a less rigorous standard than proof beyond a reasonable doubt, but a higher burden of proof than a preponderance of the evidence.  Clear and convincing evidence means that Stilla has the burden of persuading you that it is highly probable that its claims are true.  If you find that Stilla meets this burden on its invalidity defenses, you must return a verdict in its favor on the invalidity defenses.  If Stilla fails to meet this burden, then your verdict on these defenses must be for Plaintiffs.  You must make a separate decision on each of Stilla's invalidity defenses.  Here, Stilla has the burden of proving by clear and convincing evidence that the Asserted Claims of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent are invalid.

Plaintiffs bear the burden of proving the claims that they have brought against Stilla by a preponderance of the evidence.  Stilla does not bear the burden of proof on Plaintiffs' claims.  This is a lower standard of proof than that of clear and convincing.  To satisfy its burden, Plaintiffs need not prove their case to any degree of mathematical certainty.  Rather, it must produce evidence which, when considered in light of all of the facts and evidence in the case, leads you to believe that its claims are more likely true than not.  If you find that Plaintiffs meet this burden on a claim, your verdict must be for Plaintiffs on that claim.  Should Plaintiffs fail to meet this burden on a claim, your verdict must be for Stilla on that claim.  You must make a separate decision on each

of the Plaintiffs' claims.  Here, Plaintiffs have the burden of proving by a preponderance of the evidence that Stilla infringes and/or has infringed the Asserted Claims of the'933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent, and the amount of damages Plaintiffs should receive to compensate them for any infringement.

In deciding whether Plaintiffs or Stilla have met their respective burdens of proof, you must consider all of the evidence regardless of who offered the evidence. It is the weight and persuasiveness of the evidence, rather than the mere number of witnesses or documents, that matters.  In determining whether any fact at issue in the case has been proven by a preponderance of the evidence or by clear and convincing evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and you may consider all exhibits received in evidence, regardless of who may have produced them.

**Authorities:**

Charge to the Jury at 3-4, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018) (modified to address the facts and issues in this case); Final Jury Instructions at 12, *Amgen Inc. v. Hospira, Inc*., Civ. No. 15-cv-839-RGA (D. Del. Sept. 22, 2017) ECF No. 323 (modified to address the facts and issues in this case).

4.      **PATENT CLAIMS**

4.1.    **THE ROLE OF CLAIMS IN THE PATENT**

Before you can decide many of the issues in this case, you will need to understand the role

of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The

claims are important because it is the words of the claims that define what a patent covers.  The

figures and text in the rest of the patent provide a description and/or examples of the invention and

provide a context for the claims, but it is the claims that define the extent of the patent's coverage.

Each claim may cover more or less than another claim.  Therefore, what a patent covers depends,

in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements.  Each

claim sets forth its requirements in a single sentence.  The requirements of a claim are often

referred to as "claim elements" or "claim limitations."  The coverage of a patent is assessed claim-

by-claim.  When a thing (such as a product or a process) meets all of the requirements of a claim,

the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

In other words, a claim covers a product or process where each of the claim elements or limitations

is present in that product or process.


**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.2.1 (May 2020); Final

Jury Instructions at 13, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept.

22, 2017), ECF No. 323.

## 4.2.    INDEPENDENT AND DEPENDENT CLAIMS

Claims can be stated in two different ways in a patent.  The first way a patent claim can be stated is in the form of an "independent" claim.  An "independent" claim sets forth all of the requirements that must be met in order for an accused product or method to be covered by that claim, and thus infringe that claim.  It is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim 1 of the '933 Patent; claims 1 and 10 of the '780 Patent; claim 1 of the '444 Patent; and claim 1 of the '310 Patent are each independent claims.

The second way a claim can be stated is in the form of a "dependent" claim.  A dependent claim does not itself recite all of the requirements of the claim but instead incorporates the requirements of another claim or claims and adds its own additional requirements.  In this way, the claim "depends" on another claim or claims.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims from which it depends.  For example, claim 5 of the '933 Patent is a dependent claim of claim 1 and, as a result, claim 5 includes all the requirements of claim 1 and all the additional requirements of claim 5.

An accused product or method is only covered by, and therefore infringes, a dependent claim if the accused product or method meets all of the requirements of both the dependent claim and the claims from which the dependent claim depends.  Because a dependent claim incorporates all of the features of the independent claims from which it depends, if you find that an independent claim is not infringed, then the claims that depend from that independent claim cannot be infringed.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.2.1a (May 2020); Final Jury Instructions at 14, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury

Instructions at 14, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

**4.3.    CONSTRUCTION OF CLAIMS**

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of patent claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.  I have already defined the meaning of certain claim terms and I will provide to you my definitions of certain claim terms.

You must accept my definition of these words in the patent claims as correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent.  You should not take my definition of the language of the patent claims as an indication that I have a view regarding how you should decide the infringement or invalidity issues that you are being asked to decide.  These issues are yours to decide.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.2.1 (May 2020).

### 4.4.    MEANS-PLUS-FUNCTION CLAIMS

*[The parties may seek to modify this instruction in view of any guidance from the Court on the construction of the alleged means-plus-function terms for Claim 1 of the '780 Patent.]*

Claim 1 of the '780 Patent use the phrase "means for [function]."  This "means for" phrase has a special meaning in patent law.  It is called a "means-plus-function" requirement.  It does not cover all of the structures that could perform the functions set forth in the claims, namely, "partitioning said sample into partitioned sections," "performing PCR on said partitioned sections of said sample," "partitioning said sample into partitioned sections," and "for separating said sample into immiscible slugs."  Instead, the "means" phrase covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to the structure or set of structures described in the '780 Patent for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.2.3a (May 2020).

### 4.5.    OPEN ENDED OR "COMPRISING" CLAIMS

Some of the Asserted Claims use the word "comprising."

"Comprising" is interpreted the same way as "including" or "containing."  In patent claims, "comprising" means that the claims are open-ended, meaning "including but not limited to."  As such, the accused methods must contain or use everything that is in the claim, but may additionally contain or use other things.  Based on this explanation, if you find that Stilla's accused methods include all of the requirements in a claim, the fact that Stilla's accused methods may also include an additional component or components does not mean that the accused methods do not infringe the claim.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.2.1 (May 2020); Final Jury Instructions at 16, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 3233 (modified to address the facts and issues in this case).

5.      **INVALIDITY**

I will now instruct you on the rules you must follow in deciding whether or not Stilla has proven that any of the Asserted Claims are invalid.  To prove that any claim of a patent is invalid, Stilla must persuade you by clear and convincing evidence that the claim is invalid.

In this case, Stilla contends that claims 1, 3, and 5 of the '444 Patent and claims 1-3 and 9 of the '310 Patent are anticipated and, therefore, invalid.  Stilla also contends that all of the Asserted Claims of the '933 Patent, the '780 Patent, the '444 Patent, and the '310 Patent are obvious in view of the prior art, and therefore, invalid.

Stilla further contends that claims 1, 3, and 5 of the '444 Patent are invalid for failure to enable the full scope of the invention, and that claims 1, 3, and 5 of the '444 Patent are invalid for failure to fulfill the written description requirement.  I will explain the legal concepts of anticipation, obviousness, prior art, enablement, and written description in a moment.

In making your determination, you must consider each of these patent claims separately and individually.


**<u>Authorities:</u>**

Federal Circuit Bar Association Model Patent Jury Instructions § B.4.1 (May 2020); Final Jury Instructions at 20, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

**5.1.   PERSON OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time of the named inventors' invention date.

You must determine the level of ordinary skill in the field of the invention.  In deciding what the level of ordinary skill is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

The parties have agreed that a person of ordinary skill in the art of the asserted patents would have had at least (1) a Ph.D. in chemistry, biochemistry, mechanical or electrical engineering, or a related discipline with one year of experience related to systems for handling microfluidic droplets; (2) a Bachelor of Science in such fields with four years of such experience; or (3) a higher level of education but less relevant practical experience, or more practical experience but less education that would be equivalent to these qualifications.  Neither parties' experts identify any differences between the proposed definitions of a person of ordinary skill in the art that is relevant to the issues in the case.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3c(i) (May 2020); Final Jury Instructions at 21, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

**5.2.    PRIOR ART**

Under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before.  That which came before is referred to as the "prior art."

The burden of proof is on Stilla to prove that the prior art renders a claim invalid, and it never changes regardless of whether the Examiner in the Patent Office considered the prior art reference during the prosecution of the application which matured into a patent.

**Authorities:**

Final Jury Instructions at 22, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

5.3.    **ANTICIPATION**

Under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and nonobvious in light of what came before.  In general, inventions are new when they have not been made, used, or disclosed before.  The legal name for this type of challenge to the validity of a patent claim is "anticipation."

In this case, Stilla contends that claims 1, 3, and 5 of the '444 Patent and claims 1-3 and 9 of the '310 Patent are anticipated.  Anticipation must be determined on a claim-by-claim basis. Stilla must prove by clear and convincing evidence that claims 1, 3, and 5 of the '444 Patent and claims 1-3 and 9 of the '310 Patent were not new based on the prior art.

Invalidity by anticipation requires that a single prior art reference disclosed each and every requirement, or limitation, of a claimed invention arranged as in the claim.  You may not combine two or more items of prior art to find anticipation.  In determining whether every one of the elements of the claimed invention is found in a particular prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her review of that reference.

In determining whether a single prior art reference anticipates a patent claim, you should take into consideration not only what is expressly disclosed in that prior art reference but also what is inherently present or disclosed in that reference, or inherently results from its practice.  A prior art reference inherently anticipates a patent claim if the element or feature missing from the reference would necessarily result from what that reference teaches.

A party asserting inherent anticipation must prove that the allegedly inherent element was necessarily present in that reference.  The fact that it was likely present is not sufficient.  It is not required, however, that a person of ordinary skill actually recognized or appreciated the inherent

disclosure at the time the prior art reference was first known or used.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipating reference, provided the allegedly inherent feature was necessarily and inevitably present in the reference.


**<u>Authorities:</u>**

Final Jury Instructions at 23-24, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

## 5.4.   OBVIOUSNESS

As I explained previously, under the patent laws a person is granted a patent only if the invention claimed in the patent is both new and not obvious in light of what came before.  Even though an invention has not been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the art in the field of technology of the patent at the time the invention was made. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be proven by considering more than one item of prior art.

Stilla may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of technology of the patent.  In this case, Stilla contends that claims 1 and 5 of the '933 Patent, claims 1, 10, and 13 of the '780 Patent, claims 1, 3, and 5 of the '444 Patent, and claims 1-3 and 9 of the '310 Patent would have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed inventions would have been obvious to you as a layperson, to me as the judge, or to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention would have been obvious, you must consider (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the claimed invention and the prior art, and; (4) if present, so-called objective evidence or secondary considerations, which I will describe shortly.  Do not use hindsight; consider only what was known at the time of the invention.  You should not use the patent as a

road map for selecting and combining items of prior art.  You must put yourself in the place of a person of ordinary skill in the art at the time the invention was made.

To determine the scope and content of the prior art, you must determine what prior art is reasonably pertinent to the particular problems the inventors faced.  The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.

I have already instructed you on how you are to determine the level of ordinary skill in the art.  Once you have made that determination, you are to apply it in your determination whether the Asserted Claims would have been obvious.

The next factor that you must consider is the differences, if any, between the prior art and the claimed inventions.  Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.  The motivation to modify the prior art to arrive at the claimed invention need not be the same motivation that the inventor had.  Additionally, a person of ordinary skill in the art must have had a reasonable expectation of success in combining the known elements in the way the claimed invention does.

In arriving at your decision on the issue of whether the claimed inventions of the asserted patents would have been obvious to a person of ordinary skill in the art, you may take into account such factors as: (1) whether the claimed inventions were merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed inventions provide

an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the inventions; (4) whether the prior art teaches away from combining elements in the claimed inventions; and (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

In arriving at your decision on the issue of whether the claimed inventions of the asserted patents would have been obvious to a person of ordinary skill in the art, you should take into account any "objective indicia of nonobviousness" (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention;

d. Whether others invented the claimed invention at roughly the same time;

e. Whether others copied the claimed invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g. Whether the claimed invention achieved unexpected results;

h. Whether others in the field praised the claimed invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j.   Whether others sought or obtained rights to the patent from the patent holder; and

k.   Whether the inventor proceeded contrary to accepted wisdom in the field.

These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim.   Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Stilla has proven that the claimed invention would have been obvious.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.4.3c (May 2020); Final Jury Instructions at 25-26, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 21-22, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

**5.5.    WRITTEN DESCRIPTION**

The patent law contains certain requirements for the part of the patent called the specification.  The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed invention as of the patent's effective filing date.  Stilla contends that claims 1, 3, and 5 of the '444 Patent are invalid because the specification of the patent does not contain an adequate written description of the invention.  To succeed in this defense, Stilla must show by clear and convincing evidence that the specifications fail to meet the law's requirements for written description of the claimed invention.  If a patent claim lacks adequate written description, it is invalid.

In deciding whether the specification satisfies the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the art as of the effective filing date.  The written description requirement is satisfied if a person having ordinary skill in the art, reading the original patent application, would have recognized that the specifications describe the scope of the claimed invention as it is finally claimed in the issued patents and that the inventor actually possessed the full scope of the invention on or before the priority date.  It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claim. The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent

application.  However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

**<u>Authorities:</u>**

Federal Circuit Bar Association Model Patent Jury Instructions § B.4.2a (May 2020); Patent Jury Instruction Handbook § 3:32.

**5.6.   ENABLEMENT**

Stilla contends that claims 1, 3, and 5 of the '444 Patent are invalid because the patents do not disclose sufficient information to enable one skilled in the art, at the time of the invention, to make and use the claimed invention.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.  Each claim must be analyzed separately for compliance with the enablement requirement.  Stilla must prove by clear and convincing evidence that the claim was not enabled.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the art.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.  Stilla bears the burden of establishing lack of enablement by showing by clear and convincing evidence that a person skilled in the art, upon reading the patent document, would not be able to make the invention work without undue experimentation.  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.  Factors you may consider in determining whether making the full scope of the claimed invention would require undue experimentation include:

1.      the quantity of experimentation necessary;

2.      the amount of direction or guidance disclosed in the patent;

3.      the presence or absence of working examples in the patent;

4.      the nature of the invention;

5.      the state of the prior art;

6.      the relative skill of those in the art;

7.      the predictability of the art; and

8.      the breadth of the claims.

If you find that one or more of these claims did not comply with the enablement requirement, you must find each such claim invalid.

**<u>Authorities:</u>**

Patent Jury Instruction Handbook § 3:3.

**6.      INFRINGEMENT**

**6.1.   INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not Stilla has infringed and/or infringes any of the Asserted Claims in Plaintiffs' patents.

Patent law provides that any person or business entity that makes, uses, sells, or offers to sell, without the patent owner's permission, any product, apparatus, or method covered by at least one claim of a United States patent before the patent expires, infringes the patent.  In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) induced infringement; and (3) contributory infringement. Induced infringement and contributory infringement are referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.

In order to prove infringement, Plaintiffs must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.


**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.3.1 (May 2020); Final Jury Instructions at 17, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

**6.2.    DIRECT INFRINGEMENT**

To prove direct infringement, Plaintiffs must prove that the requirements of infringement are met by a preponderance of the evidence.  Direct infringement requires the unauthorized making, using, sale, or offer for sale of a patented invention in the United States during the time when the patent was in force.  Thus, Stilla's knowledge of Plaintiffs' patents and Stilla's intent are irrelevant to your determination of direct infringement.

To determine infringement, you must compare the accused product or method with each valid Asserted Claim, using my instructions as to the meaning of the patent claims.  A patent claim is infringed only if Stilla's Naica® System products or methods include each and every requirement or step in that patent claim.  If Stilla's products do not contain one or more requirements or steps recited in a claim, Stilla does not infringe that claim.

**Authorities:**

Final Jury Instructions at 18, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

## 6.3.    CONTRIBUTORY INFRINGEMENT

Plaintiffs also argue that Stilla is liable for contributory infringement by contributing to the direct infringement of the '933 Patent, the '780 Patent, the '444 Patent, and the '310 Patent by another.

In order for there to contributory infringement by Stilla, someone other than Stilla must directly infringe a valid Asserted Claim of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed any valid Asserted Claims of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent, then contributory infringement exists only if Plaintiffs prove by a preponderance of the evidence that:

- Stilla supplied a component constituting a material part of the invention;

- The component is not a common component suitable for non-infringing use; and

- Stilla supplied the component with the knowledge of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.


**<u>Authorities:</u>**

Federal Circuit Bar Association Model Patent Jury Instructions § B.3.3 (May 2020); N.D. Cal. Model Patent Jury Instructions No. 3.6 (Inducing Patent Infringement) (rev. Aug. 2017, updated Jan. 2018).

**6.4.    INDUCED INFRINGEMENT**

Plaintiffs argue that Stilla has actively induced another to infringe the asserted claims of the '933 Patent, the '780 Patent, the '444 Patent, and the '310 Patent.  In order for Stilla to have induced infringement, Stilla must have induced another to directly infringe a valid Asserted Claim of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent; if there is no direct infringement by anyone, there can be no induced infringement.  As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

If you find someone has directly infringed any valid Asserted Claim of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent, then induced infringement exists only if Plaintiffs prove by a preponderance of the evidence that:

1.  Stilla aided, instructed, or otherwise acted with the intent to cause acts by users of the Naica® System that would constitute direct infringement of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent;

2.  Stilla knew of  the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent, or showed willful blindness to the existence of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent, at that time;

3.  Stilla knew, or showed willful blindness, that the actions of the users of the Naica® System would infringe at least one of the Asserted Claims; and

4.  the users of the Naica® System infringed at least one of the Asserted Claims.

To find willful blindness, Plaintiffs need to prove by a preponderance of the evidence that (1) Stilla must have subjectively believed that there was a high probability that a patent existed covering the accused method, and (2) Stilla must have taken deliberate actions to avoid learning of the patent.

**<u>Authorities:</u>**

AIPLA Model Patent Jury Instructions, § 3.8 (2019) (modified to address the facts and issues in this case); N.D. Cal. Model Patent Jury Instructions No. 3.7 (Inducing Patent Infringement) (rev. Aug. 2017, updated Jan. 2018).

6.5.    **INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

In this case, Plaintiffs assert that Stilla infringes claim 1 of the '933 Patent, claim 10 of the

'780 Patent, and claim 1 of the '444 Patent under the doctrine of equivalents.  If you decide that

the method of using the accused products does not literally infringe one of these Asserted Claims,

you must then decide whether that method infringes the Asserted Claim under what is called the

"doctrine of equivalents."  If a company makes, uses, sells, offers to sell within, or imports into

the United States a product or process that does not literally meet all of the elements of a claim

and thus does not literally infringe that claim, there can still be direct infringement if that product

or process satisfies that claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, the method can infringe an asserted patent claim if it

includes steps that are identical or are an equivalent step to the requirements of the claim.  If the

method is missing an identical or equivalent step to even one requirement of the Asserted Claim,

the method cannot infringe the claim under the doctrine of equivalents.  Thus, in making your

decision under the doctrine of equivalents, you must look at each individual requirement of the

Asserted Claim and decide whether the method of using the accused products has either an

identical or an equivalent step to that individual claim element.

A step of a method is equivalent to an element of an Asserted Claim if a person of ordinary

skill in the art would think that the differences between the step and the requirement were not

substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the

patent application is filed may still be equivalent for the purpose of the doctrine of equivalents if

it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an asserted claim and a step of the method is not substantial is to consider whether, as of the time of the alleged infringement, the step of the method performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim. One way to decide whether any difference between a requirement of an asserted claim and a part of the product is not substantial is to consider whether, as of the time of the alleged infringement, the part of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim. Another way to put this is that you may consider whether the requirement of an asserted claim and the step of the method or part of the product are interchangeable at the time of the alleged infringement.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.3.1c (May 2020); N.D. Cal. Model Patent Jury Instructions No. 3.4 (Infringement Under the Doctrine of Equivalents) (2015).

Plaintiffs propose to include the following instruction:[2]

### 7.   WILLFUL INFRINGEMENT

To prove willful infringement, Plaintiffs must persuade you that Stilla infringed a valid claim of the Plaintiffs' patent.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Plaintiffs must persuade you that it is more likely true than not that Stilla intentionally ignored or recklessly disregarded that claim.  You must base your decision on Stilla's knowledge and actions at the time of infringement.  Evidence

---

[2] **Plaintiffs' Position**:  In the course of fact discovery, it became clear based on non-public information that Stilla knowingly and willfully infringed Bio-Rad's patents prior to the suit being filed and continues to do so. Stilla refused to provide discovery on many aspects of its willful infringement, citing privilege, and requested that Plaintiffs not recite any of the details of the evidence of its knowledge in this pretrial memorandum. Plaintiffs' respectfully request leave to conform the pleadings to the evidence of Stilla's willful infringement that Plaintiffs will present at trial. Stilla's willful infringement is closely tied to Plaintiffs' underlying infringement claims and is evidenced by on non-public information in Stilla's exclusive possession, unlike the cases Stilla cites below.

**Stilla's Position**:  There should be no jury instruction regarding willful infringement.  Plaintiffs did not plead willfulness in their complaint.  Nor did Plaintiffs ever seek leave from the Court to amend their complaint to add a willful infringement claim.  And in the nearly two years this case has been pending, Plaintiffs made no claim or allegation of willfulness by Stilla.  Plaintiffs did not inform Stilla that they planned to ask to amend their pleadings until less than a month prior to trial, and did not provide any justifications for the undue delay.  Plaintiffs did not seek consent to amend their pleadings during the pre-trial conference.  To date, Plaintiffs still have not filed any motion for leave to amend their pleadings.  Prior to this, Plaintiffs' position was that no party should be allowed to amend their pleadings.  At this late stage, to allow Plaintiffs to now argue that Stilla was allegedly willful would be unfairly prejudicial to Stilla, as Stilla was not on notice of this alleged claim and there was no discovery (including possible defensive discovery) into any alleged willful infringement.  *See, e.g.*, *Euro-Pro Operating LLC v. Dyson Inc.*, 164 F. Supp. 3d 235, 240 (D. Mass. 2016) (denying request to amend the pleading after close of fact discovery because "allowing an amendment at this stage of proceedings would be unduly prejudicial as it would require the reopening of fact discovery and the taking of additional depositions in support of a legal theory that Plaintiff did not attempt to advance until far too late in the life of this case"); *Resnick v. Copyright Clearance Ctr., Inc.*, 422 F. Supp. 2d 252, 256 (D. Mass. 2006) (denying motion for leave to amend the pleading based on undue delay and futility).

that Stilla has knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness.  Rather, to show willfulness, you must find that Stilla engaged in additional conduct evidencing deliberate or reckless disregard of Plaintiffs' patent rights.

In deciding whether Stilla willfully infringed, you should consider all of the facts surrounding the infringement including: whether Stilla intentionally copied Plaintiffs' patented technology in developing the accused method; whether Stilla knew, or should have known, that its conduct involved an unreasonable risk of infringement; whether Stilla had a reasonable belief at the time of infringement that its products did not infringe the asserted patent; and whether Stilla tried to cover up its infringement.

**Authorities:**

N.D. Cal. Model Patent Jury Instructions No. 3.8 (Willful Infringement); *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1932 (2016); Preliminary Jury Instructions*, Greatbatch Ltd. v. AVX Corp.,* Case No. 13-cv-723 (D. Del. Aug. 10, 2017), ECF No. 1032*;* Official Transcript of Jury Trial at 1053:13-25*, Greatbatch Ltd. v. AVX Corp*., Case No. 13-cv-723 (D. Del. Sep. 19, 2017), ECF No. 1064.

**8.     DAMAGES**

**8.1.     DAMAGES—GENERALLY**

If you find that Stilla infringed any valid claim of the '933 Patent, the '780 Patent, the '444 Patent, or the '310 Patent, you must then consider what amount of damages to award to Plaintiffs. I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case on any issue.  If you find that Stilla has not infringed any valid claim of any patent, then Plaintiffs are not entitled to any damages.

The damages you award must be adequate to compensate Plaintiffs for any infringement you determine to have occurred.  Damages are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Plaintiffs in approximately the same financial position that it would have been in if the parties had the infringement not occurred.

Plaintiffs have the burden to prove the amount of their damages by a preponderance of the evidence.  While Plaintiffs are not required to prove the amount of their damages with mathematical precision, they must prove them with reasonable certainty.

If you find that Plaintiffs have established infringement of a valid patent claim of the patents-in-suit, Plaintiffs will be entitled to a reasonable royalty to compensate them for that infringement.  A reasonable royalty is defined as the amount of money the parties would have agreed upon as a fee for Stilla using Plaintiffs' invention before the infringement first began.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.5.1 (May 2020); Final Jury Instructions at 28*, Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury

Instructions at 24, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

**8.2.     REASONABLE ROYALTY AS A MEASURE OF DAMAGES**

A royalty is a payment made to a patent holder in exchange for the patent holder's permission to make, use, offer to sell, sell, or import the patented invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty."  Either method is designed to compensate the patent holder based on the infringer's use of the patented technology.  It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.  A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future.  When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales. Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products.  A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

In considering this hypothetical negotiation, you should focus on what the expectations of the parties to the negotiation would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began.  You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.  The reasonable royalty you determine must be a royalty that would have

resulted from the hypothetical negotiation, and not simply a royalty the parties would have preferred.

You also may consider evidence of the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

**<u>Authorities:</u>**

Federal Circuit Bar Association Model Patent Jury Instructions §§ B.5.6, B.5.7 (May 2020); AIPLA's Model Patent Jury Instructions §§ 10.2.5.2, 10.2.5.6 (2019); Final Jury Instructions at 29, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 25, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

**8.3.    FACTORS FOR DETERMINING A REASONABLE ROYALTY**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)    The royalties, if any, received by the parties to the negotiation for the licensing of the patents-in-suit.

(2)    The nature and scope of the license, such as whether the license is non-exclusive or exclusive.

(3)    The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(4)    Plaintiffs' established policy and program to enforce their patent rights, if any, or license their patents under special conditions to preserve its monopoly.

(5)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, or business risks.

(6)    The commercial relationship between the parties to the negotiation such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(7)    The duration of the patent and term of the license.

(8)    The established profitability of the products made under the patents, their commercial success, and their popularity.

(9)    The nature of the patented inventions, the character of any commercial examples of them, and the benefits to those who have used the inventions.

(10)     The extent to which Stilla has made use of the inventions and any evidence probative of the value of that use.

(11)     The opinion testimony of qualified experts.

(12)     The amount that a licensor and a licensee would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty Stilla would have been willing to pay and Plaintiffs would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation among the parties to the negotiation taking place at a time prior to when the infringement began.

**<u>Authorities:</u>**

Federal Circuit Bar Association Model Patent Jury Instructions § B.5.8 (May 2020); Final Jury Instructions at 30-31, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 26, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

**8.4.    USE OF COMPARABLE LICENSE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the parties to the negotiation in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions § B.5.9 (May 2020); Final Jury Instructions at 27, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

Stilla proposes to include the following instruction:[3]

## 8.5.   DAMAGES – INCREMENTAL VALUE

A reliable determination of the royalty base in this case must consider the incremental value

of the accused product that is allegedly attributable to the patents-in-suit.  The amount you find as

damages must be based on the relative value of the claimed invention in comparison to the value

of the conventional elements recited in the claim, standing alone.  In other words, the ultimate

reasonable royalty award must be based on the incremental value that the patented invention adds

to the end product.  When the accused infringing products have conventional *features, your award*

---

[3] **Plaintiffs' Position:**  Plaintiffs do not believe that this instruction is necessary.  In the *Exmark* case cited by Stilla, the Court opines that the apportioned value of one feature of the claim as separate from the rest may be evaluated by looking to the *Georgia-Pacific* factors, which are already addressed in proposed jury instruction 8.3. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018), citing *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("As we have explained, "the standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation"). Furthermore, the *Ericsson* case, the portion cited by Stilla involves as standards essential patent (SEP) and the reasonable and non-discriminatory (RAND) analysis which is not applicable to this case and, at times, contradicts the analysis based on the *Georgia-Pacific* factors. *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1229-1233 (Fed. Cir. 2014) ("In a case involving RAND-encumbered patents, many of the *Georgia-Pacific* factors simply are not relevant; many are even contrary to RAND principles").

<u>Stilla's Position</u>:  Where the asserted claims purport to cover the asserted product as a whole, "and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).  Here, it is particularly important and necessary to provide jury with these instructions, since certain components of the Naica® System employ only well-known and conventional methods, and such conventional components and methods should not be considered for damages.  Stilla's proposed instruction is thus necessary for the jury to properly assess the amount of damages, if any, based on the incremental benefit derived from the claimed invention.  *See Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("[T]he patent holder should only be compensated for the approximate incremental benefit derived from his invention.").

must be apportioned so that it is based only on the value of the innovative features attributable to the claimed invention, and no more.

**Authorities:**

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC,* 879 F.3d 1332, 1348 (Fed. Cir. 2018); *Ericsson, Inc. v. D–Link Sys., Inc.,* 773 F.3d 1201, 1226, 1233 (Fed. Cir. 2014).

## 9.     DELIBERATIONS AND VERDICT

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish by explaining some things about your deliberations in the jury room, and your possible verdicts.

Each of you brings to your jury service your life experiences and knowledge.  This serves only as background for your common sense and judgment.  In rendering your verdict you must consider only, and decide the case solely upon, the evidence you heard in court in light of my instructions.

*[Optional]:  Your first order of business will be to select a foreperson.  The foreperson will have the same voice and the same vote as the other deliberating jurors.  The foreperson will act as the moderator of the discussion and will serve as the jury's spokesperson.  The foreperson's most important obligation is to insure that any juror who wishes to be heard on any material issue has a full and fair opportunity to be heard by his or her fellow jurors.  When the jury has reached a verdict, the foreperson will fill in the appropriate answers, sign and date the Verdict Form, and inform the court officer that the jury is ready to return to the courtroom.*

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson.

One more thing about messages.  Do not ever write down or tell anyone outside of the jury how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

**<u>Authorities:</u>**

Charge to the Jury at 18-19, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Final Jury Instructions at 34*, Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 28, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

**10.     UNANIMOUS VERDICT**

This case has taken a great deal of time and effort to prepare and try.  There is no reason to think that it could have been better tried, or that another jury would be better qualified than you are to decide it.  It is important therefore that you reach a verdict if you can do so conscientiously.  Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous as to each of the special questions I am going to ask you to answer.  Your answers will be recorded on the Verdict Form by your foreperson.  The fact that one of you is foreperson does not give that person special status in your deliberations.  You are all equal.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so consistent with your individual judgment.  Each of you must decide the case for yourself, but you should do so only after considering all of the evidence and listening to the views of your fellow jurors.  Do not be afraid to change your opinion if you think that you are wrong after hearing the opinions of your fellow jurors.  But do not come to a decision simply because other jurors insist that it is right, and do not surrender an honest belief about the weight and effect of the evidence simply in order to reach a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  The verdict form asks you a series of questions about the parties' contentions.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.  Unless

you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.


**Authorities:**

Charge to the Jury at 19, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS (D. Mass. May 8, 2018), ECF No. 473; Final Jury Instructions at 35*, Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 28, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

11.     **DUTY TO DELIBERATE**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that—your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**Authorities:**

Final Jury Instructions at 36, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 29, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

12.     **SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, tablet, or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, Snapchat, MySpace, LinkedIn, YouTube, Twitter, Reddit, or TikTok to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

**Authorities:**

Final Jury Instructions at 37, *Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case).

13.     **COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

**Authorities:**

Final Jury Instructions at 38*, Amgen, Inc. v. Hospira, Inc.*, Civ. A. No. 15-cv-0839-RGA (D. Del. Sept. 22, 2017), ECF No. 323 (modified to address the facts and issues in this case); Final Jury Instructions at 29, *AVM Techs., LLC v. Intel Corp.*, Civ. A. No. 15-cv-0033-RGA (D. Del. May 8, 2017), ECF No. 719 (modified to address the facts and issues in this case).

Date: June 25, 2021                    Respectfully Submitted,


                                       */s/ Justin Constant*
                                       Edward Reines (admitted *pro hac vice*)
                                       Derek C. Walter (admitted *pro hac vice*)
                                       WEIL, GOTSHAL & MANGES LLP
                                       201 Redwood Shores Parkway
                                       Redwood Shores, CA 94065
                                       Tel: 650-802-3000
                                       Fax: 650-802-3100
                                       bio-rad.10x.ma@weil.com

                                       Garland Stephens (admitted *pro hac vice*)
                                       Justin Constant (admitted *pro hac vice*)
                                       WEIL, GOTSHAL & MANGES LLP
                                       700 Louisiana Street,
                                       Suite 1700
                                       Houston, TX 77002
                                       Tel: (713) 546-5011
                                       Fax: (713) 224-9511
                                       bio-rad.10x.ma@weil.com

                                       David S. Godkin (BBO #196530)
                                       James E. Kruzer (BBO #670827)
                                       BIRNBAUM & GODKIN, LLP
                                       470 Atlantic Avenue, 4th Floor
                                       Boston, MA 02210
                                       Tel: 617-307-6100
                                       Fax: 617-307-6101
                                       kruzer@birnbaumgodkin.com
                                       godkin@birnbaumgodkin.com

                                       *Attorneys for Plaintiffs Bio-Rad Laboratories,*
                                       *Inc., the University of Chicago, and Lawrence*
                                       *Livermore National Security, LLC*


                                       */s/ Elizabeth G.H. Ranks*
                                       Whitney A. Reichel (BBO #663599)
                                       Elizabeth G.H. Ranks (BBO #693679)
                                       Qiuyi Wu (BBO #704069)
                                       FISH & RICHARDSON P.C.
                                       One Marina Park Drive
                                       Boston, MA 02210-1878
                                       wreichel@fr.com
                                       liz.ranks@fr.com

qwu@fr.com
(617) 542-5070 Telephone
(617) 542-8906 Facsimile

Juanita R. Brooks (*pro hac vice*)
Michael A. Amon (*pro hac vice*)
K. Nicole Williams (*pro hac vice*)
FISH & RICHARDSON P.C.
12860 El Camino Real
Suite 400
San Diego, CA 92130
brooks@fr.com
(858) 678-5070 Telephone
(858) 678-5099 Facsimile

*Attorneys for Defendants*
*Stilla Technologies, Inc. and*
*Stilla Technologies*

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 25th day of June, 2021.

*/s/ Justin Constant*
Justin Constant